﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 191104-47040
DATE: August 31, 2020

ORDER

Entitlement to service connection for a thoracolumbar spine disability is granted.

FINDING OF FACT

1. The record does not contain clear and unmistakable evidence demonstrating that the Veteran’s current thoracolumbar spine disability both preexisted his active duty service and was not aggravated during his active duty service.

2. Resolving all reasonable doubt in the Veteran’s favor, his current thoracolumbar spine disability is at least as likely as not related to his military service.

CONCLUSION OF LAW

1. With respect to the Veteran’s thoracolumbar spine disability, the statutory presumption of soundness upon entry into active duty service has not been rebutted. 38 U.S.C. § 1111 (2012); 38 C.F.R. § 3.304 (2019); VAOPGCPREC 3-2003; Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004).

2. The criteria for service connection for a thoracolumbar spine disability are met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2019).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from March 1961 to February 1964.

This case is on appeal from a September 2019 rating decision, in which the agency of original jurisdiction found that new and relevant evidence had been received to readjudicate the claim of entitlement to service connection for a thoracolumbar spine disability. This is a favorable finding by the agency of original jurisdiction (AOJ) and the Board will proceed to the address the claim on the merits. See 38 U.S.C. § 5104A; 38 C.F.R. § 3.104(c).

In the November 2019 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Hearing docket. Therefore, the Board may only consider the evidence of record at the time of the AOJ decision on appeal, as well as any evidence submitted by the Veteran at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a).

The Veteran testified before the undersigned Veterans Law Judge in March 2020. That same day, he submitted a chronology of his thoracolumbar spine problems, but submitted no additional evidence thereafter.

Service Connection

The Veteran claims entitlement to service connection for a thoracolumbar spine disorder. During his March 2020 hearing, the Veteran acknowledged that, although he injured his back four years prior to his active duty service, it resolved prior to service and, after going through basic training, he injured his back and required in-service treatment. See March 2020 Hearing Transcript, pp. 6-7. He claims that his in-service back problems caused him to be on limited duty for the duration of his military service and that, despite the absence of treatment records, his in-service lumbar spine problems continued following his discharge. Id. at 8, 10.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

A veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. 38 U.S.C. § 1111; 38 C.F.R. § 3.304(b).

VA’s General Counsel has held that to rebut the presumption of sound condition under 38 U.S.C. § 1111, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. See VAOPGCPREC 3-2003; see also Wagner v. Principi, 370 F. 3d 1089 (Fed. Cir. 2004). The Court has held, however, that this presumption attaches only where there has been an entrance examination in which the later complained-of disability was not detected. See Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). In VAOPGCPREC 3-2003, VA’s General Counsel noted that “[u]nder the language of [38 U.S.C. § 1111 ], VA’s burden of showing that the condition was not aggravated by service is conditioned only upon a predicate showing that the condition in question was not noted at entry into service.” Crucially, if the presumption of sound condition is rebutted, “then the Veteran is not entitled to service-connected benefits.” Wagner, 370 F.3d at 1096.

“Clear and unmistakable evidence” is a more formidable evidentiary burden than the preponderance of the evidence standard. See Vanerson v. West, 12 Vet. App. 254, 258 (1999). It is an “onerous” evidentiary standard, requiring that the preexistence of a condition and the no-aggravation result be “undebatable.” See Cotant v. West, 17 Vet. App. 116, 131 (2003).

The Veteran’s December 1960 entrance examination is silent for any abnormalities related to his lumbar spine. Therefore, he is presumed sound upon entrance.

Following his December 1960 entrance examination, an August 1961 service treatment record noted the Veteran’s report of low back pain that started four to five days earlier, as well as his report of similar problems in the past. An October 1961 service treatment record noted the Veteran’s report that his symptoms increased when he stood at attention. A subsequent October 1961 treatment record noted the sacralization of the L5 bilaterally, as well as his report of recurrent low back pain with lifting and standing at attention. Another October 1961 service treatment record noted the Veteran report that he had experienced intermittent low back pain for four years, but that it had since become worse since he joined the service. Another October 1961 service treatment record noted an impression of low back syndrome. A November 1961 service treatment record noted that the Veteran was receiving physical therapy for his low back pain. It was noted that lifting, prolonged standing, and incorrect sitting posture aggravated his low back pain. Later in November 1961, he was placed on a physical profile due to his low back pain.

The Veteran submitted a February 2019 private medical opinion rendered by Dr. B.N., who noted that he had reviewed his service treatment record. Dr. B.N. also addressed his report of an injury prior to service; however, he concluded that the pre-service injury was not chronic, and it was not until service when his low back pain became an impediment to ability to function. Dr. B.N. then concluded that it was clear that the Veteran experienced back pain during the early 1960s, but that it was unclear as to the cause of the pain, and whether such represented a preexisting condition.

In a March 2019 opinion, Dr. E.M. noted the Veteran’s report of lower back problems dating back to his time in the military. Dr. E.M. then concluded that, based on his service treatment records, the Veteran’s in-service back issues in were similar to his current problems, and that it was quite possible that his problems began during his active duty service.

In a June 2019 letter, Dr. B.N. opined that the Veteran’s current lumbar spine problems were more likely than not related to his military service. Dr. B.N. noted that the Veteran was seen during service on numerous occasions. Furthermore, Dr. B.N. noted that, while congenital musculoskeletal conditions would certainly increase the risk of pain and/or dysfunction due to increased physical demands, the Veteran did not report pain during his induction physical or during basic training.

VA examiners have also opined as to the etiology of the Veteran’s current disabilities. In April 2019, the Veteran underwent a VA examination, and the examiner noted current diagnoses of intervertebral disc syndrome, spinal stenosis, vertebral fracture, bilateral laminectomy, retrolistheses, and spondylosis. The examiner then noted the Veteran’s report of ongoing problems since 1961 that have progressed over time. Ultimately, the examiner opined that the Veteran’s current lumber spine disorders were less likely than not related to his military service. The examiner noted that the sacralization noted in his service treatment records was a common irregularity of the spine, that it was a congenital anomaly that occurred in the embryo, and that it had nothing to do with the Veteran’s military service. The examiner concluded that his current lumbar spine problems were likely due to age and were not do the sacralization noted during his military service. The opinion did not discuss whether the Veteran’s current conditions were related to service, notwithstanding the abnormality.

In August 2019, the Veteran underwent another VA examination. After noting the Veteran’s pertinent service treatment records, as well as his reports of ongoing lumbar spine problems, the examiner ultimately opined that his lumbar spine problems, which clearly and unmistakably preexisted his military service, were clearly and unmistakably not aggravated by his service. The examiner noted the Veteran’s in-service reports of lumbar spine pain that existed prior to service, as well as the finding of sacralization of the L5 vertebra, and the examiner stated that this clearly existed prior to service. The examiner then stated that the compression fracture that was currently present on X-ray was not present during service. Therefore, the examiner concluded that it was less likely than not that the Veteran’s in-service activities made his back problems worse. Again, this opinion focused largely on the onset of the Veteran’s sacralization, without adequate discussion of the etiology of the Veteran’s other several current lumbar spine disabilities. 

In September 2019, another VA examiner concluded that it was less likely than not that the Veteran’s lumbar spine disorders were due to his military service. The examiner noted that, although he was seen in 1961 for back problems, there was no subsequent treatment for back problems until 2018, a gap of more than fifty-four years. The examiner continued that the Veteran’s current problems were not explained by his in-service complaints, but that there were more likely due to his age-related degenerative changes.

Based on the evidence of record, and after resolving all reasonable doubt in the Veteran’s favor, the Board finds that service connection for the Veteran’s current thoracolumbar spine disability is warranted.

Initially, the evidence of record demonstrates a current thoracolumbar spine disability, diagnosed during the April 2019 VA examination as intervertebral disc syndrome, spinal stenosis, vertebral fracture, bilateral laminectomy, retrolistheses, and spondylosis. Furthermore, the Veteran’s service treatment records clearly document in-service complaints of, and treatment for lumbar spine problems. Thus, the question is whether his current disability is related to his in-service complaints.

The Board notes that the AOJ denied the Veteran’s claim for service connection by noting that the sacralization noted in his service treatment records was a congenital defect, as explained by the April 2019 VA examiner. However, as alluded to above, the medical evidence of record does not clearly indicate that all of his currently-diagnosed thoracolumbar spine problems preexisted his military service or that they are manifestations of the congenital sacralization. Indeed, the Veteran’s December 1960 entrance examination is silent for any lumbar spine disability. Furthermore, while the April 2019 VA examiner indicated that sacralization was a congenital anomaly, the examiner did not indicate that his other currently-diagnosed lumbar spine disabilities preexisted his military service. This is also supported by the Veteran’s competent and credible lay statements concerning the onset and continuity of his lumbar spine problems. Indeed, although he acknowledged a pre-service injury to his lumbar spine, the Veteran indicated that the injury resolved, that he had no chronic residuals prior to service, and that his current lumbar spine problems began in 1961.

Even if the Board were to assume as true that the Veteran’s lumbar spine disorder preexisted his entry into active duty service, it is not clear and unmistakable that such disability was NOT aggravated beyond its natural progression during his active duty service. As noted above, he sought treatment for low back pain on many occasions during his period of active duty service, and he has competently and credibly testified as to worsening symptoms during service. An October 1961 service treatment record noted that the Veteran’s low back pain had worsened since he joined the service, a November 1961 service treatment record noted that lifting, prolonged standing, and incorrect sitting posture aggravated his low back pain, and later in November 1961, he was placed on a physical profile due to his low back pain. Furthermore, while the August 2019 VA examiner opined that it was less likely than not that the Veteran’s in-service activities made his back problems worse, the Board notes that this is the incorrect legal standard, and the appropriate standing is whether the Veteran’s lumbar spine disability “clearly and unmistakably was not aggravated” by his military service. Finally, the March 2019 opinion concluded that it was quite possible that his problems began during his active duty service. Thus, it is at the very least debatable as to whether any preexisting lumbar spine disorder was aggravated during his active duty service. As such, the presumption of soundness in this case remains attached and has not been rebutted. See VAOPGCPREC 3-2003; Wagner, 370 F. 3d at 1089.

Where the government fails to rebut the presumption of soundness under section 1111, the Veteran’s claim must be considered one for service incurrence or direct service connection. See Wagner, 370 F.3d at 1094. 

(Continued on Next Page)

Given the Veteran’s competent and credible lay statements concerning the onset and continuity of his lumbar spine problems since service, including his report that the pre-service injury to his lumbar spine resolved without residual symptoms, which he is competent to provide; his service treatment records showing complaints of, and treatment for, lumbar spine problems during service that were exacerbated by lifting, prolonged standing, and incorrect sitting posture; and the June 2019 medical opinion from Dr. B.N. who concluded that his lumbar spine disability was at least as likely as not related to his military service, the Board will award service connection for a thoracolumbar spine disability based on in-service incurrence.

 

 

V. Chiappetta

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board James R. Springer, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.