Citation Nr: 1736717 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 08-32 272 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to service connection for asthma. 


WITNESSES AT HEARINGS ON APPEAL

The Veteran and friend 


ATTORNEY FOR THE BOARD

M. Lavan, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1977 to July 1983. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a September 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma. Jurisdiction has been transferred to the RO located in Philadelphia, Pennsylvania. 

The Veteran testified at a Board hearing in 2010 before a Veterans Law Judge who subsequently retired from the Board. The Veteran was notified of that fact in June 2012 and given an opportunity to have another hearing. In April 2016, the Veteran testified at a hearing before the undersigned Veterans Law Judge. Transcripts of both hearings are associated with the claims file. 

This matter came before the Board in June 2016, at which time the Board remanded the matter for an addendum medical opinion. An adequate medical opinion was obtained in June 2017; thus, no further action is required. Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. The Veteran's asthma did not clearly and unmistakably preexist service.

2. The Veteran was not exposed to mustard gas in service. 

3. The Veteran's asthma did not begin in service and is otherwise unrelated to service, including treatment for an acute respiratory disease in January 1977. 


CONCLUSION OF LAW

The criteria for service connection for asthma have not been met. 38 U.S.C.A. §§ 1131, 5103, 5103A (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.306 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. In every decision, the Board must provide a statement of the reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review by the Court. 38 U.S.C. § 7104(d)(1); see Allday v. Brown, 7 Vet.App. 517, 527 (1995). Although the entire record must be reviewed by the Board, the Court has repeatedly found that the Board is not required to discuss, in detail, every piece of evidence. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Dela Cruz v. Principi, 15 Vet. App. 143, 149 (2001) (rejecting the notion that the Veterans Claims Assistance Act mandates that the Board discuss all evidence). Rather, the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake, infra. 

The Board finds that VA's duties to notify and assist have been met and all due process considerations have been satisfied. Except as discussed herein, the Veteran has not raised issues with the duties to notify or assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016) (applying Scott to the duty to assist). Moreover, no new evidence was received after the June 2017 Supplemental Statement of the Case. 

Further, the Veteran has not alleged any deficiency with the conduct of his hearings with respect to the duties discussed in Bryant v. Shinseki, 23 Vet. App. 488, 496-97 (2010). In this regard, the Federal Circuit ruled in Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016) that a Bryant hearing deficiency was subject to the doctrine of issue exhaustion as laid out in Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Thus, the Board need not discuss any potential Bryant problem because the Veteran has not raised that issue before the Board.

The Veteran contends that treatment records are missing because he was employed at several Army hospitals during service, so they were stored separately as employee health records. When service records are missing through no fault of the claimant, VA has a heightened obligation to consider the applicability of the benefit of the doubt rule, to assist the claimant in developing his claim, and to explain its decision. O'Hare v. Derwinski, 1 Vet. App. 365 (1991). No presumption, however, either in favor of the claimant or against VA, arises when there are lost or missing service records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005). Here, the RO has made several attempts to obtain a complete set of medical and personnel records; the entirety of the available records were associated with the claims file as of May 2015. The Board concludes that all procedures to obtain any missing service treatment records were correctly followed, and further attempts to obtain such records would be futile. See 38 C.F.R. § 3.159(c)(2), (3).

The pertinent regulations were provided to the Veteran in the Supplemental Statement of the Case and will not be repeated here.

Presumption of Soundness

At the time of the service entrance examination, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111. Only such conditions as are recorded in examination reports are considered as "noted." 38 C.F.R. § 3.304(b). When determining whether a defect, infirmity, or disorder is "noted" at entrance into service, supporting medical evidence is needed. Crowe v. Brown, 7 Vet. App. 238 (1994).

Here, the December 1976 entrance examination was normal and did not note any respiratory issues, including asthma. Accordingly, the Veteran is presumed sound at entrance into service. 

When the veteran is presumed sound at entrance, the burden then falls on the Government to rebut the presumption of soundness by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). The available evidence does not clearly and unmistakably show that the Veteran's asthma preexisted service. January 1977 and September 1979 service treatment records show a past medical history of asthma, but the Veteran denied asthma in a March 1982 dental record. This evidence does not rebut the presumption of soundness; accordingly, the Veteran is presumed sound at entrance into service. 

Service Connection for Asthma

The Veteran contends that his asthma is related to mustard gas he inhaled while stationed at Fort Leonard Wood, Missouri in 1977. Specifically, he said he was exposed while inhaling gas in a chamber, during training classes on how to seal gas masks, and during an 18-mile march. He stated that he was hospitalized as a result of mustard gas exposure. In the alternative, he argues that his asthma began during basic training in January 1977 and resulted in hospitalization. 

Initially, the Board finds that the Veteran was not exposed to mustard gas during service. In making this determination, the Board relied heavily on the Department of Defense's May 2006 official finding that the Veteran was not exposed to mustard gas. His military personnel records show that he served as a patient administration specialist and do not show that his duties would have exposed him to mustard gas. Moreover, January 1977 treatment records show that he presented for treatment of a sore throat, cough, headache, stiff neck, elevated temperature, and chest pain. He was diagnosed with an acute respiratory illness and treated with Tylenol; there was no reference to mustard gas exposure. The Board finds that the Veteran's general statement alone, particularly in light of contradictory evidence from the Department of Defense, is neither competent nor credible evidence that he was exposed to mustard gas during service. Accordingly, the Veteran's claim for service connection based on exposure to mustard gas is denied.

The Board further finds that the Veteran's asthma did not begin in service and is not related to his treatment for acute respiratory disease in January 1977. In making this determination, the Board relied heavily on his service records, post-service treatment records, lay statements, and VA medical examinations. The available service records do not show treatment for or a diagnosis of asthma, even though the Veteran has contended that he was, on occasion, treated multiple times a day for asthma-related symptoms. As discussed above, the Veteran was diagnosed with an acute respiratory disease in January 1977, which was treated with Tylenol and resolved after four days. While a past history of asthma was documented, there was no indication that the Veteran's respiratory issue was asthma-related. Additionally, in March 1982, the Veteran reported that he did not have asthma on a dental clinic health questionnaire. At separation from service, he opted against a medical evaluation. Importantly, the Veteran testified that he was not actually diagnosed with asthma during service at the April 2016 Board hearing. 

Post-service medical records do not discuss asthma until May 1991, when a private medical record indicated a history of asthma. The earliest documentation of treatment for asthma was in January 1993, approximately ten years after separation from service. 

The Veteran underwent a VA examination in October 2009. After review of the claims file, the examiner opined that it was less likely than not that the asthma began in service or was related to the in-service acute respiratory disorder. He based his opinion on the Veteran's own statements that he was not diagnosed with asthma in service. He also relied on the January 1977 medical records, which showed that the Veteran presented with clear lungs and flu symptoms such as a fever, chest pain, and sore throat. The record did not indicate that his acute respiratory illness was anything other than a viral illness or flu, as it was treated with Tylenol, rather than asthma-related medication, and it resolved within days.

An addendum medical opinion was obtained in June 2017, in which the examiner concluded that the Veteran's asthma did not begin in service and is not related to his in-service respiratory illness. The examiner opined that the Veteran likely had an acute respiratory infection based on the January 1977 treatment records which showed an elevated temperature and no diagnosis of asthma. She also noted that the Veteran's medical records do not discuss asthma until January 1993, ten years after separation from service, which supports her conclusion that the asthma is unrelated to service. While the Veteran's private records show a history of asthma in 1991, the Board finds that two years does not significantly affect the examiner's conclusion because there is still a large gap in time (eight years) between separation from service and the first asthma-related medical record post-service. Accordingly, the Board still found this medical opinion probative. 

The Board considered the positive nexus opinion submitted in October 2010 by Dr. Kurzrok. He wrote that the Veteran was "treated and diagnosed with asthma while serving in the military." As discussed previously, however, the Veteran was not diagnosed with asthma in service. This nexus opinion is based on an inaccurate factual account and the Board has therefore accorded it no probative value. 

The Board also considered the lay statements and testimony associated with the record. Specifically, the Veteran and his friend testified in October 2010 that he was treated for asthma multiple times a day in service. The Board finds that this is contradicted by the available service treatment records that do not show any treatment for asthma. While the Board acknowledges the Veteran's contentions that there are missing in-service employee health records, he also stated during the April 2016 hearing that he was neither diagnosed with asthma nor treated with an inhaler in service. Importantly, there are no medical records showing post-service treatment for asthma until January 1993. 

The Veteran also claimed that his January 1977 hospitalization was for asthma, not acute respiratory disease. The Board finds that contemporaneous medical records and subsequent VA examinations are more probative, however, in determining that he was treated for an acute respiratory illness that was not asthma-related. 

The Board therefore finds that the weight of the evidence is against service connection for asthma. In light of the Veteran's missing service records, the Board has a heightened obligation to consider the applicability of the benefit-of-the-doubt rule. The Board finds, however, that the preponderance of the evidence is against the claim for service connection, and the benefit-of-the-doubt standard does not apply. See 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


ORDER

Service connection for asthma is denied. 



____________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs